CARLSON MOTOR & TRUCK CO. v. MAXWELL-BRISCOE MOTOR CO.

(Circuit Court of Appeals, Second Circuit.  May 6, 1912.)

No. 181.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—INTERNAL COMBUSTION ENGINE.

The Carlson patent, No. 797,555, claim 1, for improvements in internal combustion engines, designed to facilitate access to the inside working mechanism for the purpose of adjustment or to make repairs, while for an improvement only, was not anticipated and in the limited field covered discloses patentable invention; also, *held* infringed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suit in equity by the Carlson Motor & Truck Company against the Maxwell-Briscoe Motor Company. Decree for complainant (178 Fed. 458), and defendant appeals. Affirmed.

Samuel Owen Edmonds and Dean S. Edmonds, for appellant.
Livingston Gifford and E. W. Marshall, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. The patent in controversy was granted to Charles A. Carlson August 22, 1905, for improvements in internal combustion engines and relates particularly to the fourcycle multicylinder type. It consists in novel features whereby the working parts are readily accessible and in means whereby access may be had

to the valves and valve operating mechanism for each of the cylinders, independently of the similar devices in connection with other cylinders. It also consists in a novel construction, arrangement and location of the valves and their operating mechanism. The principal objects of the invention are to secure simplicity, compactness and rigidity of construction of the various parts. The patentee also insists that his improvements reduce the weight and size of the parts and make them readily accessible when it is necessary for the operator to reach them.

The engine illustrated and described has four cylinders, but the patentee points out that the invention may be employed where more or less than four cylinders are employed.

The drawings show a construction by which easy access may be had to all parts of the engine without seriously dismembering it. The specification says:

"To obtain access to the interior of the casing, the entire cover-plate-cover 21, together with the cam-shaft and cams, cam-followers and slides, and all parts carried thereby, may be removed by merely removing the six bolts which hold the said cover-plate in place. * * * All parts being carried by and self-contained within the cover-plate said plate may be as easily replaced. To obtain access to the cam-shaft, cams, and cam-followers it is only necessary to remove the auxiliary cam-plate 36, and then to obtain access to any one or pair of the slides 31 it is only necessary, in addition to removing the said auxiliary cover 36, to remove the individual cover-plate 32, covering the slide or slides to which access is desired."

The claim in controversy is as follows:

"In an internal-combustion engine, the combination with a hollow casing, opposed cylinders secured thereto, and inlet and exhaust valves mounted in a part stationary with said cylinders, of a removable cover-plate for said casing, a cam-shaft mounted in said cover-plate, and cam-followers also mounted in said cover-plate and removable therewith, said cam-followers arranged to engage and operate said valves."

The claim is for a combination, in an internal combustion engine, having the following elements:

First.—A hollow casing.

Second.—Opposed cylinders secured thereto.

Third.—An inlet and exhaust valves mounted in part stationary with said cylinders.

Fourth.—A removable cover-plate for said casing.

Fifth.—A cam-shaft mounted in said cover-plate.

Sixth.—Cam-followers also mounted in the cover-plate and removable therewith, said followers being arranged to engage and operate said valves.

The defenses are anticipation and noninfringement.

The contention of the defendant is that the claim is void because it is anticipated by prior patents and devices and, if limited so as to avoid the prior art, that the defendant's device does not infringe.

Although the record deals largely with complicated and minute details, it is obvious that the improvement covered by the claim is a simple one. Prior to Carlson's invention, in order to get at the bearings of the connecting rod and crank-shaft, it was necessary, except

in the instances hereafter referred to, to take the engine apart, remove the cam-shaft and followers and, after the bearings had been adjusted, to replace and readjust the parts. All this took time and money; a quick, simple and inexpensive adjustment or repair was not possible prior to Carlson's contribution to the art. Since then it is easily accomplished by the simple device of mounting the cam shaft and followers in the cover of the crank case so that when the cover is removed the bearings are accessible.

The invention is clearly stated by Judge Hazel in the following language:

"The object of the invention was to enable ready access to the inside working mechanism of the engine for the purpose of adjustment or to make repairs. To attain this end the inventor conceived the idea of assembling the valve operating appliances in a separable frame and joining them thereto and he arranged the bearings for the cam-shaft and the connecting rods within the interior of the hollow casing upon which the frame or cover-plate rests."

The invention enables the mechanic by removing the cover-plate to reach the connecting rod bearings and adjust them while the crankshaft bearings are in place. It makes the work of adjustment easier and the parts to be adjusted more accessible. The difficulty of doing this work without dismembering the engine in prior types of opposed cylinder engines was a serious drawback to their efficiency.

Although several accomplished mechanical experts were working on the problem, Carlson was the first to solve it by his removable cover-plate with cam-shaft mounted therein and removable therewith. The invention was not generic; it related only to an improvement in existing structures, but was clearly an advance in the art which, in view of the testimony as to its efficiency and popularity, required inventive, rather than mechanical skill.

The patent to Duryea, No. 605,815, dated June 14, 1898, application filed June 14, 1897, was the best reference offered by the defendant at the final hearing. It is for a gas engine and shows a separable crank casing but the crank-shaft revolves in bearings contained in the two parts of the casing which are bolted together for that purpose. To remove the valve controlling mechanism it is necessary to remove half of the crank-shaft casing. The patentable feature of Carlson's contribution to the art was the readily removable cover-plate with its moving parts. Duryea does not have this feature, the part which corresponds approximately to the cover-plate of the patent in suit cannot be taken out without removing eight or nine bolts and to a considerable extent dismantling the engine.

In the Duryea structure the removable part carries not only the valve gear but in addition, the upper halves of the crank-shaft bearings. The defendant's brief contains the following:

"Another question involved, therefore, is the complainant's contention that there should be read into the claim the limitation that while the cover-plate must carry the cam-shaft and followers, it must carry nothing else."

We are not prepared to say that the foregoing correctly states the complainant's contention but, assuming that it does, we have no hesitation in answering in the affirmative if the something added defeats the

entire invention. A claim should be construed according to the plain import of its language and in the present case there can be no doubt that the fourth element, as above stated, must have the fifth and sixth elements mounted therein. The addition of the upper halves of the crank-shaft bearings and the necessary change in the size of the frame render the Duryea structure comparatively inefficient for accomplishing the objects which Carlson had in view.

It is worthy of note that in the interference proceedings both parties took the same view as the Duryea patent, viz., that it did not anticipate. It was only after the interference had been decided in favor of Carlson that the defendant took the position that the invention was first disclosed by Duryea.

The entire controversy relating to the Duryea patent has been so carefully considered by the Circuit Court and by the officials of the Patent Office in the interference that no useful purpose will be served by a repetition of their arguments and conclusions. Suffice it to say that we agree with them.

A rehearing was granted in the Circuit Court upon patents granted to Walrath, Maxim and Young & Murray, on the ground that they were newly discovered.

The court heard the parties and decided that Maxim's engine, "Mark XLIII," which embodies the features of the Carlson invention, was completed in January, 1904, prior to the application for the Carlson patent, but subsequent to Carlson's reduction to practice in the latter part of October, 1903.

The discussion will, therefore, be confined to the Maxim patent and the structures made under it prior to the date of Carlson's invention.

It cannot be denied that the defenses based on these patents are somewhat discredited by their late appearance in the litigation. The trial court was entirely right in receiving them, and we must accept the defendant's statement that it did not know of them at the time the proofs for final hearing were taken.

The question, however, remains: Why did the defendant not know of patents relating to the same art, and issued by the United States Patent Office only some six years prior to the patent in suit? However, we will consider them as if pleaded in the original answer.

The patent to Maxim, No. 645,177, was granted March 13, 1900, upon application filed July 26, 1898. The object of the invention, as stated in the specification, "is to provide for the complete inclosing of the working parts of the motor, while at the same time permitting free access to such working part to be had when necessary." This application was in interference with Walrath, the result being that he was awarded a broad claim and Maxim a limited claim. Walrath's patent, No. 632,859, is dated September 12, 1899, the application being filed August 29, 1898.

Maxim describes an internal combustion engine with one vertical cylinder and a casing to receive the working parts of the engine. The casing is provided with a movable cover-plate for an opening in the

casing. Such plate, by means of a bracket, supports the cam-shaft which is provided with cams marked $H^5$ on the drawings. The cover-plate is also provided with guides, extending upward therefrom and in these the cam-followers reciprocate, their lower ends co-acting with the cams $H^5$ and their upper ends co-acting with the valve stems. The engine is provided with a piston, a connecting rod and a crank-shaft formed in two parts, each being formed with crank disks, the piston rod playing between the disks.

The specification says:

"A gear $G^6$ on the end of the crank-shaft meshes with a gear $H$ on a counter-shaft $H^1$. The latter is supported in a suitable bearing carried by a bracket $H^2$, which depends from a movable plate $H^3$. The casing $F$ is provided with an opening between the crank-shaft and the valve-chest large enough to admit the counter-shaft $H^1$ with its gear, and is closed by the plate $H^3$, which may be secured to its seat by suitable bolts $H^4$. The shaft $H^1$ carries the cams $H^5$, which co-operate in the usual manner with the valve-rods $H^6H^7$, the latter passing through suitable guides $H^8$ on the plate $H^3$. In this manner the valve-gear can be removed readily, whenever required, without disturbing other parts of the motor, and yet it is at all times, when in use, completely inclosed within the continuous casing $F$."

Engines embodying the characteristics of the Maxim patent were manufactured and sold as early as 1898, and operated successfully. The engine of the Maxim patent is of a different type from the one Carlson describes, and the problem which Maxim attempted to solve was not the one which confronted Carlson. Maxim was dealing with a single cylinder engine, Carlson with a multi-cylinder engine. The removal of the cover in Maxim's device would not give efficient access to the bearings of the crank-shaft for adjustment or repair. The repairer could see inside, but he could not adjust the crank bearings without taking the engine apart. The removal of the cover-plate of the Maxim engines does not at all accomplish the results which follow a removal of Carlson's plate, for the reason that it does not permit access to the casing to which the cylinder is attached. None of them, except "Mark XLIII," which was made after Carlson's invention, has the feature which is the valuable one of the Carlson patent, viz., reaching the interior of the crank casing by removing the cover with cam-shaft and followers attached.

Walrath's structure is sufficiently illustrated by the following quotation from the specification:

"$D^1$ represents a closing plate or cover adapted to be bolted to the plate or casting $D$ to cover the aperture $d$ therein. It will thus be seen that by removing the closing-plate $D^1$ the mechanism for operating the valves and igniter is exposed to view and the operator can reach in through the large opening $d$ for the purpose of adjusting the cams or other working parts. It will also be seen by removing the bolts which secure the plate or casting $D$ in position, the entire casting, together with the cam-shaft, the parts carried thereby, the idle pinion, and valve-lifters, can all be withdrawn from the base for the purpose of adusting or repairing the parts, thus obviating the necessity of working within the base for these purposes. The casting $D$, and the mechanism carried thereby, can be removed and replaced without interfering with any other parts of the engine, as the only connection between this mechanism and the other parts is the intermeshing of the idle pinion $e^1$ with the driving-pinion $c^2$."

The first claim is as follows:

"1. In an explosive-engine, the combination with the main frame, of a plate or casting provided with means for supporting the valve-actuating mechanism and means for detachably securing said plate or casting to the frame whereby said plate or casting and the mechanism carried thereby may be removed for repairs or adjustment, substantially as described."

Walrath was dealing with single cylinder stationary engines. The valve mechanism mounted in the cover-plate is absent from his construction. As is said by the complainant's expert:

"The Walrath structure does not have the valve mechanism mounted 'in the cover-plate,' as required by claim 1 of the Carlson patent, but has it mounted in the crank case or base and on brackets carried by a cover-plate which is an entirely different matter.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"Walrath further had no need to obtain access to the crank-shaft through this opening and the sole necessity of ever getting these valve operating parts out of the engine would be at such long intervals as might be determined upon for complete overhauling of the machine. Access to the connecting rod would, as I have said, normally be had through the opening $a^1$. In other words, by using cam followers and mounting them in a frame used as a cover-plate, Carlson provides that whether the object is to examine the connecting rods or the valve operating mechanism no other part is disturbed and no adjustment is affected, while Walrath by using pivoted valve lifters and mounting his whole cam shaft mechanism on a pair of brackets attached to a plate, must disturb substantially every valve and igniter adjustent to examine his valve mechanism or to examine his connecting rod mechanism, if we can assume that any one would be so foolish as to remove the plate $D$ for that purpose when the connecting rod is very much more accessible through the unobstructed opening on the other side of the base."

The language of claim 1 of the Walrath patent may describe and include the Carlson construction, but when the machines are compared and the objects which the two patentees had in view are considered, it is plain that the improvement which gives vitality to Carlson's invention was not present in Walrath's mind and could not be achieved by the structure which he has described and shown. In other words the "ready access" which he describes would not enable the mechanician to make the adjustments and repairs which Carlson had in mind.

We do not deem it necessary to discuss the Young and Murray defense or the other patents found in the record.

We incline to the opinion that the Circuit Court was right in holding that the new references add nothing of importance to the defense based on the Duryea patent.

The invention of Carlson is not a fundamental one, it deals with matters of minor importance and must be limited to the structure shown, but on the other hand it has accomplished an important result in the art to which it refers and he is entitled to the benefits thus secured. If it be no better than the structures upon which the defendant relies, the Maxwell Company can use those structures with impunity, so far as the complainant is concerned. If on the other hand, Carlson has made an invention, even though it be of minor importance, he is entitled to protection.

There can be little doubt as to the defendant's infringement. That the defendant's structure was within the first claim of the Carlson

patent was, in effect, admitted in the interference proceeding. It would be ignoring the essence of the invention to construe the cover shown in photograph No. 2, as the removable cover-plate of the claim, for said plate is a cover pure and simple having nothing mounted therein. The question is not one of nomenclature but of mechanics, and relates not to the names given to the parts of the combination, but to the various functions they perform.

The removable plate in which the cam-shaft and followers are mounted performs its functions whether its top be closed or not. One who uses the combination, whether the top cover be on or off, infringes the claim.

Having in mind the distinction just referred to, it will be found that every element of the claim is found in defendant's engine combined as in the Carlson engine.

Although we have been assisted by unusually able briefs on both sides, the consideration of this case has been difficult and perplexing. This has been largely due to the immense number of exhibits, drawings and photographs, many of them insufficiently identified, and also to the difficulty which men, unskilled in mechanics, have in understanding complicated machinery from the drawings attached to patents.

As previously stated, the result of our examination leads us to the conclusion that Carlson, in the limited field covered by the claim, has made an improvement which rises to the dignity of invention and that the defendant has infringed.

The decree is affirmed, with costs.